# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 07-CR-279

MICHAEL MORSE,

        Defendant.

_____

## ORDER

On October 23, 2007, a grand jury sitting in this district returned a single-count indictment charging Michael Morse with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On November 9, 2007, Morse was arraigned before Magistrate Judge Aaron Goodstein and entered a plea of not guilty to the charge. On December 3, 2007, Morse, through his attorney, filed a motion to suppress all evidence seized pursuant to a traffic stop on August 29, 2007. On January 4, 2008, Magistrate Judge William Callahan, Jr., issued a recommendation to this court that Morse's motion to suppress be granted. For reasons set forth in a January 25, 2008 order, this court remanded the matter back to Magistrate Callahan for further consideration. Following this court's remand for further consideration, on February 25, 2008, Magistrate Callahan once again issued a recommendation to this court that Morse's motion to suppress be granted. The government filed its objection to the recommendation, and Morse has filed his reply.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge may consider dispositive motions, such as motions to suppress, and issue recommendations to the district judge regarding the motions. *See id.* When a party objects to a magistrate's findings, the district court judge must make *de novo* determinations as to these findings. *See id.* § 636(b)(1)(C); *see also Delgado v. Bowen,* 782 F.2d 79 (7th Cir. 1986). The district court may adopt the recommendation in part or in its entirety and has the final authority of judgment in the case. *Delgado*, 782 F.2d at 82. If necessary, the district court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court has reviewed the evidence and transcripts from the evidentiary hearings and finds them sufficient to make factual and credibility determinations on those records alone.

## BACKGROUND

On December 18, 2007, Magistrate Callahan conducted an evidentiary hearing on Morse's motion to suppress. Three witnesses testified: Officers Chad Boyack and Cory Washington were called by the government, and Tobias Cunning was called by the defense. During the evidentiary hearing, two exhibits were received by the court, a Map (Government Exh. 1) and an excerpt of a Wisconsin Statute (Defense Exh. 1).

Officer Chad Boyack testified that he had been employed as an officer with the Milwaukee Police Department for over ten years. (December 18, 2007 Evidentiary Hearing Tr. 6). He is currently assigned to the Fifth District, located at Fourth and

Locust Streets, in Milwaukee, Wisconsin, and he has been at this district for about three years. (Tr. 7).

Officer Boyack was on duty the morning of August 29, 2007. He was on patrol with his partner, Officer Cory Washington, and they were in an unmarked squad car. While the officers were driving eastbound on Burleigh Street in Milwaukee, they observed a maroon Ford Crown Victoria at Second Street and Burleigh proceeding westbound. Officer Boyack, the driver of the car, made a U-turn on Burleigh and began following the vehicle. Officer Boyack testified that he observed the vehicle disregard a red light at the intersection of West Burleigh Street and Dr. Martin Luther King Drive. (Tr. 9). The officers also noticed that the vehicle had no license plate displayed where one was supposed to be on the rear plate bracket of the car. These events took place around three o'clock in the morning. Officer Boyack testified that the neighborhood was fairly desolate, and he did not recall any other vehicles being on the road at that time. (Tr. 9-10).

Officer Boyack immediately activated the patrol car's sirens and the Ford Crown Victoria promptly pulled over to the curb in the 400 block of West Burleigh. (Tr. 11). After Officer Boyack pulled the patrol car over, he stepped out of the car and approached the driver's side; Officer Washington approached the passenger's side of the Ford Crown Victoria. As the driver rolled down the window, Officer Boyack stated he could distinctly smell the presence of marijuana in the vehicle. He asked the driver to step out of the vehicle, and he complied. Officer Boyack testified that the driver was cooperative and he soon learned that his name was Tobias

Cunning. As soon as Cunning was taken to the backside of the vehicle, Officer Washington asked the passenger of the vehicle, later identified as Morse, to step out of the vehicle. (Tr. 12).

Officer Boyack, who was keeping an eye on the entire scene, described Morse as having a lot of "nervous energy about him" and said there was a "shiftiness of his body." (Tr. 13). As Morse stepped out of the vehicle, he reached towards his pants pockets, and Officer Washington directed him to keep his hands up in the air. Officer Boyack observed that as his partner was about to search him, he dropped his hands a second time. Once Morse made this second gesture towards his pocket area, Officer Boyack drew his gun and kept it in a "low ready" position. (Tr. 13). Officer Boyack instructed Morse to listen to Officer Washington and keep his hands in the air.

As Morse began to put his hands in the air, his body shifted. Officer Washington attempted to grab his shirt and pants, but he started to run away from the scene and towards a grassy area on North Julia Street. Boyack recalled Officer Washington communicating to him that he had a gun and she began to chase after Morse. Morse was eventually apprehended and was conveyed to District Five by another officer. (Tr. 14).

Officer Boyack testified that Cunning did not appear to be intoxicated or under the influence of any drug. Neither officer was specifically looking for this vehicle; Officer Boyack stated that they were in the area for patrol purposes. (Tr. 15).

Officer Cory Washington testified that she has been employed with the Milwaukee Police Department for five years and is assigned to District Five. (Tr. 32). She was working during the early morning hours of August 29, 2007, and was on patrol in her assigned district. Officer Washington similarly testified that she and Officer Boyack first observed Cunning's car as it began traveling westbound down Burleigh Street. She stated that Officer Boyack was traveling eastbound. (Tr. 34-35).

Washington first noticed that there was no front plate on the vehicle Cunning was driving and, as she turned around, she observed that the vehicle had a temporary registration plate taped to the window. (Tr. 34). At this point, Boyack conducted a U-turn and got behind the vehicle. Washington then testified that after they were behind the car, she observed the vehicle travel through a red light at the intersection of Martin Luther King Drive and Burleigh. Washington described this intersection as well-lit and generally highly traveled. (Tr. 35).

After the officers observed Morse travel through a red light, Washington said Boyack activated his sirens and stopped the vehicle. Both officers exited the patrol car and approached Cunning's vehicle; Boyack began speaking with Cunning, and Washington began speaking with Morse. Washington testified that as the door was opened or the window was pulled down (she couldn't remember which), she could smell a strong order of marijuana. Washington also testified that Morse was asked to step out of the vehicle because of the marijuana odor the officers detected. Washington stated that the car was pulled over in the first instance because of what

she believed to be an improper display of temporary registration and the running of the red light. (Tr. 36).

Cunning, the driver of the vehicle, testified that he was proceeding westbound on West Burleigh Street when he noticed an unmarked police car heading in the opposite direction. (Tr. 44). Next, he saw the car make a U-turn and begin following him. In contrast to the officers' testimony, Cunning stated that he stopped at the red light at the intersection of West Burleigh and Dr. Martin Luther King Drive. (Tr. 45). He testified that the police signaled for him to pull over after the light turned green and he proceeded through the intersection. Cunning testified that after he pulled over, he and Morse were asked to step out of the car, but he was not issued a citation for any traffic violation. (Tr. 46-47).

## ANALYSIS

Magistrate Callahan has now twice recommended that Morse's motion be granted. In each recommendation, Magistrate Callahan found that the government failed to demonstrate, by a preponderance of the evidence, that the officers had probable cause to believe a traffic violation had occurred. This court has reviewed the evidence and record in this case and, for the reasons set forth below, the court will adopt the magistrate's recommendation and grant Morse's motion to suppress.

In the absence of a warrant, searches are generally prohibited by the Fourth Amendment. However, there are exceptions to this general rule, and when the government obtains evidence pursuant to one of these exceptions, it has the burden of establishing the exception's applicability by a preponderance of the evidence.

*See United States v. Basinski*, 226 F.3d 829, 834 (7th Cir. 2000). If the government fails to demonstrate an exception to the warrant requirement, the evidence obtained during the illegal search must be suppressed. *Id; see also United States v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999).

As noted in Magistrate Callahan's recommendations, there were arguably two grounds for stopping Cunning's vehicle: the placement of the temporary registration plates, and the alleged failure to stop at the red light. A traffic violation may provide police officers with the requisite probable cause to stop a vehicle. *United States v. Hernandez-Rivas,* 348 F.3d 595, 599 (7th Cir. 2003) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 322 (2001)). The government must establish, by a preponderance of the evidence, that the stop of the vehicle was reasonable, meaning that there was probable cause to believe that a defendant committed a traffic violation. *See, e.g., United States v. Murphy*, 402 F. Supp. 2d 561, 565 (W.D.Pa. 2005); *see also Basinski,* 226 F.3d at 833-34.

As to the placement of the temporary registration plates, this court finds that this factor could not have provided the requisite probable cause to stop Cunning's vehicle and adopts Magistrate Callahan's recommendation in this regard. As discussed in the recommendation, this circuit and others have made a legal distinction between officers' mistakes based on facts or law. When an officer makes a mistake of law, the court has routinely held that such a mistake is not reasonable and will often invalidate the basis for a traffic stop. *See United States v. McDonald*, 453 F.3d 958, 961-62 (7th Cir. 2006). For example, in *McDonald* an officer stopped

the defendant's car for using a signal while rounding a bend in the street. The officer believed he had violated Illinois' "improper use of turn signal" statute and, therefore, gave the officer probable cause to stop. During the traffic stop, the officer observed a handgun on the floor of the car. McDonald, having been previously convicted of a felony offense, was charged with violations of 18 U.S.C. § 922(g)(1). In his motion to suppress the firearm, McDonald demonstrated that he did not violate Illinois' traffic laws and that the officer's mistake of law could not justify the stop. The Seventh Circuit reversed the district court's denial of his motion and held that "a police officer's mistake of law cannot support probable cause to conduct a stop." Judge Williams, writing for the Seventh Circuit, stated, "[i]t makes no difference that an officer holds an understandable or 'good faith' belief that a law has been broken," because "[a] stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable." *Id.* at 962-63.

In applying the facts of this case to the Seventh Circuit's holdings, it is easy to conclude, as Magistrate Callahan did, that the license registration issue could not have justified a stop of Cunning's vehicle. Morse correctly argued that Cunning did not violate Wis. Stat. § 341.15(2), which states:

> Registration plates shall be attached firmly and rigidly in a horizontal position and conspicuous place. The plates shall at all times be maintained in a legible condition and shall be so displayed that they can be readily and distinctly seen and read. Any peace officer may require the operator of any vehicle on which plates are not properly displayed to display such plates as required by this section.

Cunning's temporary registration was placed in the rear window of the car, a location Morse correctly argued was "conspicuous" as required by the statute. Even if the

officers believed that Cunning was violating the Wisconsin traffic laws by not having a temporary license affixed to the bracket at the rear of the car, this could not support a traffic stop; as noted above, an officer's mistaken belief of law, even if it is made in good faith, will not justify a stop. See *McDonald*, 453 F.3d at 961.

In the original motion and objections, the government argues that the converse "mistake" application of the law should apply to justify the officers stop based upon the alleged running of the red light. As will be discussed below, the government's reliance on *United States v. Cashman*, 216 F.3d 582 (7th Cir. 2000) and its analysis of a "mistake of fact" is misplaced and inapplicable to Morse's suppression motion.

Both officers testified that they were certain Cunning disregarded the red traffic light at Burleigh and Dr. Martin Luther King Drive. A review of the transcript does demonstrate that their testimony corroborated one another, and their recalls of the night in question appeared clear. However, Cunning also gave sworn testimony that he did not run the red light. Cunning was an equally credible witness; he clearly remembered the event, and gave his answers calmly and without hesitation.

As a finder of fact, the court may accept or reject any or all of a witness's testimony. See *United States v. Berthiaume*, 233 F.3d 1000, 1004 (7th Cir. 2000). Credibility determinations may be made on the court's assessment of the witnesses' demeanor and recollection of the events, any interest the witness has in the outcome of events, the extent to which external evidence contradicts or corroborates the

testimony, and the extent to which the testimony rings true in regards to reason and logic.  *See Murphy*, 402 F. Supp. 2d at 569.  This court concludes, as Magistrate Callahan did, that on this record the government did not meet its burden by demonstrating that there was probable cause to stop the vehicle.

To begin, the court finds the government's arguments as to why Cunning should be disbelieved to be without merit and adopts Magistrate Callahan's findings in this regard.  It would be manifestly unfair to discredit Cunning's testimony and make a determinative finding against his statements on the basis of his relationship with Morse.  The court also finds that the events of the evening tip the balance of the testimony in favor of Cunning.  While it is certainly not the only deciding factor, the fact that Cunning received no citation significantly undercuts the officers' testimony that he did in fact disregard the traffic light.  Moreover, there is no mention of this alleged violation in the incident report, and the officers' responses that he was cooperative and "they had bigger fish to fry" do not assuage the court's concerns.  Finally, the court must note that all three witnesses testified that the patrol car made a U-turn and was positioned directly behind Cunning's car.  It is a common experience for any driver, aware of being followed by a police car, to redouble his efforts to follow "the rules of the road."  In this circumstance, the court finds that it defies logic that Cunning would disregard a traffic light at a large and well-controlled intersection.  In sum, this court does not find that the government has demonstrated that it was more likely than not that Cunning disregarded the red light; that is to say,

the government has not met its burden of proof to establish that there was probable cause to stop the vehicle.

In light of this determination, the government argues that Morse's motion must be denied, even if he did not run the red light, because the court could find that the officers made a reasonable mistake of fact as to whether or not a traffic violation occurred. While there is no dispute that running a red light is a violation of the traffic laws in Wisconsin, *see* Wis. Stat. § 346.04(2) (disregarding a red traffic light is a traffic violation for which a driver may be pulled over), the court finds the cases on which the government relies to be distinguishable from the facts of Morse's case. The court does not dispute the well-established holdings that when a defendant is challenging a stop involving an officer's mistake of a fact, that stop will not be rendered unreasonable under the Fourth Amendment so long as the circumstances confronting the officer support a reasonable belief that a traffic law has been violated. *See Ornelas v. United States*, 517 U.S. 690, 695-96 (1996). However, the court does not find this to be an appropriate circumstance for its application.

The Seventh Circuit's holding in *Cashman* is instructive on this issue. In *Cashman*, the Seventh Circuit held that the police had probable cause to stop a car with a crack in its windshield, as the state law required that no vehicle's window be "excessively cracked or damaged." *Cashman*, 216 F.3d at 586 (quoting Wis. Admin. Code. § Trans. 305.34(3) (internal quotations omitted). The Wisconsin Code further specified that a windshield is "excessively cracked or damaged" if "[t]he windshield has cracks which extend into any area more than 8 inches from the frame." Wis.

-11-
Case 2:07-cr-00279-JPS   Filed 04/11/08   Page 11 of 13   Document 37

Admin. Code. § Trans. 305.34(3) (b).  Cashman argued that the crack in his windshield did not meet that criteria, but the Seventh Circuit nevertheless held that the officers still had probable cause to stop his car because "the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one." *Cashman*, 216 F.3d at 587.  The *Cashman* court noted that the legality of the stop did not depend "on whether *Cashman* was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield.  The pertinent question instead is whether it was reasonable for [the officer] to *believe* that the windshield was cracked to an impermissible degree."  *Id.* (emphasis in original).

While it is undoubtedly reasonable to mistake the length of a crack in a windshield, it is entirely different to make a factual mistake as to whether or not a driver ran through a red light, particularly when an officer's vantage point is directly behind the car in question.  Courts that have analyzed the "mistakes of fact" arguments are generally dealing with technical violations of traffic statutes that, upon first glance, may be difficult to discern if any actual violation took place.  Hence, the universal emphasis that a mistake of fact must be "reasonable."  *See id.*  The courts own review of "mistakes of fact" cases confirms this.  *See United States v. Bustillos-Munoz*, 235 F.3d 505 (10th Cir. 2000) (upholding validity of a traffic stop where a police officer mistakenly believed the driver was inappropriately using his high beams); *United States v. Dorais*, 241 F.3d 1124 (9th Cir. 2001) (upholding the stop of a rental vehicle the police believed to be overdue, even though the 48-hour rental return grace period applicable in the state's statute had not lapsed); *United*

*States v. Fowler,* 402 F. Supp. 2d 1338 (upholding a traffic stopped based upon the officer's mistaken belief the defendant had a non-functioning brake light; the light in question was actually a functioning fog light). In contrast to this case law, the court concludes that the officers could not have been reasonably mistaken about running a red traffic light signal.

Although perhaps viewed as a close question, the court determines that Officer Boyack and Officer Washington did not have probable cause to stop Cunning's car. Therefore, In the absence of the government meeting its burden and demonstrating, by a preponderance of the evidence, that there were legal grounds to stop the car, the court is constrained to suppress the gun seized as a result of this stop.

Accordingly,

**IT IS ORDERED** that Magistrate Callahan's recommendations [Docket #21 and #34] be and the same are hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Morse's motion to suppress [Docket #13] be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 11th day of April, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge